1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JACOB WINDING,

11           Plaintiff,                   No. 2:09-cv-03526 KJM KJN PS

12       v.

13   ALLSTATE INSURANCE COMPANY
     and DOES 1 through 25, inclusive,
14
             Defendants,                  ORDER AND FINDINGS AND
15                                         RECOMMENDATIONS
     _____
16
     ALLSTATE INSURANCE COMPANY,
17
             Counter-claimant,
18
         v.
19
     JACOB WINDING,
20
             Counter-defendant.
21   _____/

22           Presently before the court[1] is defendant and counter-claimant Allstate Insurance

23   Company's ("Allstate") "Alternative Motion for Partial Summary Judgment/Summary

24   Adjudication," which seeks summary judgment as to some of plaintiff's claims for relief alleged

25   _____
              [1] This case proceeds before the undersigned pursuant to Eastern District of California Local
26   Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

                                                 1

1  against Allstate, as well as plaintiff's request for punitive damages (Dkt. No. 60).  Also before

2  the court is a separate motion for summary judgment filed by Allstate, which pertains to

3  Allstate's counterclaim.

4           The court heard this matter on its law and motion calendar on October 27, 2011.

5  (Minutes, Oct. 27, 2011, Dkt. No. 104.)  Attorney Dennis M. Campos appeared on behalf of

6  Allstate.  Plaintiff, who is proceeding without counsel, appeared and represented himself at the

7  hearing.[2]  The undersigned has considered the briefs, oral arguments, and appropriate portions of

8  the record in this case.[3]  For the reasons stated below, the undersigned sustains plaintiff's

9  evidentiary objections in part, and overrules them in part.  The undersigned also denies Allstate's

10  request for judicial notice in its entirety.  The undersigned ultimately recommends that Allstate's

11  motion for partial summary judgment as to plaintiff's claims be granted in part and denied in

12  part.  Specifically, the undersigned recommends that Allstate be granted summary judgment as to

13  plaintiff's insurance bad faith claim and the corresponding request for punitive damages, but that

14  Allstate's motion be denied in all other respects.  Finally, the undersigned recommends that

15  Allstate's motion for summary judgment as to its counterclaim be denied.

16  I.      BACKGROUND

17          A.      Plaintiff's First Amended Complaint

18                  Plaintiff alleges that he is the owner of real property located at 1127 West Harding

19  Way, Stockton, California 95203 ("Property").  (First Am. Compl. ¶ 6, attached as Ex. A to

20

21          [2] Plaintiff was previously represented by counsel, but his counsel was permitted to withdraw
    from his representation of plaintiff in this case on June 13, 2011.  (Order, June 13, 2011, Dkt.
22  No. 57.)

23          [3] Plaintiff has had consistent difficulty with following the court's orders and Local Rules.
    In regards to Allstate's pending motions, plaintiff initially failed to file written oppositions and was
24  provided leave to file such oppositions.  (Order, Sept. 6, 2011, Dkt. No. 76.)  Plaintiff subsequently
    filed a single timely written opposition and supporting materials (Dkt. Nos. 78-81), but later filed
25  several "amended" opposition documents in violation of the court's prior order and Local Rules (see
    Dkt. Nos. 84-88).  Accordingly, several of these late filings were disregarded and have not been
26  considered here.  (See Order, Sept. 21, 2011, Dkt. No. 89.)

2

1   Notice of Removal, Dkt. No. 1.)  He further alleges that Allstate solicited and provided general

2   homeowner's insurance coverage for the Property under policy number 00924347169 ("Policy"),

3   with a coverage period of August 2007 through August 2008.  (Id.)  Plaintiff alleges that the

4   Policy insured him against loss or damage to the Property and its contents caused by theft or

5   vandalism.  (Id. ¶ 7.)

6           Plaintiff alleges that on or around July 12, 2008, the Property was subjected to

7   theft and vandalism through no fault of plaintiff.  (First Am. Compl. ¶ 10.)  He alleges damages

8   and loss to items including the "cabinets, fixtures, floor covering, plumbing, an HVAC system,

9   sinks, refrigerator, stove, appliances, sprinkler system, and paint."  (Id. ¶ 11.)  Plaintiff further

10   alleges that he repaired or replaced these items at a total cost of $114,816.44.  (Id.)

11          Plaintiff alleges that he submitted a claim to Allstate on or around July 12, 2008,

12   and made good faith efforts to cooperate with Allstate in regards to the investigation, adjustment,

13   and settlement of the claim from approximately July 12, 2008, through August 6, 2009.  (First

14   Am. Compl. ¶¶ 12-13.)  He alleges that although "Allstate's claims representative acknowledged

15   coverage and accepted liability for the claim under the Policy" and sent plaintiff a check in the

16   amount of $15,704.85, Allstate nonetheless "failed to fairly and promptly investigate, adjust, and

17   settle the claim."  (Id. ¶¶ 14-15 (emphasis omitted).)  Plaintiff alleges that Allstate created

18   artificial obstacles to and requirements for settling the claim, that he was forced to retain an

19   attorney, and that Allstate thereafter refused to communicate with his attorney.  (See id. ¶¶ 15,

20   17-19.)

21          Plaintiff alleges that on August 6, 2009, Allstate sent plaintiff a letter denying full

22   payment of the claim.  (First Am. Compl. ¶ 20.)  He alleges that Allstate refused to communicate

23   with plaintiff after issuing the denial letter.  (Id. ¶ 21.)

24          Plaintiff initiated this action in state court and filed the operative First Amended

25   Complaint in the California Superior Court on December 8, 2009.  (See Notice of Removal,

26   ////

1  Ex. A, Dkt. No. 1.)[4]  Allstate removed the action to federal court on December 21, 2009, on the

2  basis of this court's diversity jurisdiction.  (Id.)

3        Plaintiff alleges four claims for relief.  In his first claim, plaintiff seeks declaratory

4  relief in the form of a declaration of the parties' rights and obligations under the Policy with

5  respect to plaintiff's claim thereunder.  (See First Am. Compl. ¶¶ 23-25.)  Plaintiff's second

6  claim asserts that Allstate "breached the terms of the Policy by failing and refusing to pay"

7  plaintiff the sums sought in connection with the insurance claim submitted by plaintiff.  (See id.

8  ¶ 28.)  Plaintiff's third claim is for fraud, and is premised on allegedly false statements made by

9  Jess Molina, Allstate's claims representative, that "Allstate had accepted liability for plaintiff's

10 claim"; "Allstate would negotiate a fair and timely settlement of the amount of plaintiff's claim";

11 and "[t]hat plaintiff should proceed with making repairs to the Property because the insurer

12 would promptly and fully reimburse him for the cost."  (See id. ¶¶ 32-33.)  Plaintiff's fourth

13 claim is for "insurer bad faith," which is premised on Allstate's refusal to pay the claim despite

14 accepting liability, Allstate's failure to negotiate in good faith, and Allstate's failure to

15 communicate with plaintiff regarding the claim.  (See id. ¶ 40.)

16     B.   Allstate's Counterclaim

17       On March 7, 2011, Allstate filed its Amended Answer and Counterclaim with

18 leave of court.  (Am. Answer & Counterclaim, Dkt. No. 42; Order, Mar. 3, 2011, Dkt. No. 41.)

19 Although the counterclaim is somewhat confusingly alleged, Allstate essentially alleges that

20 plaintiff committed fraud that voided the Policy.  (See Counterclaim ¶ 5.)  Allstate alleges that

21 plaintiff willfully concealed or misrepresented material facts concerning the insurance claim and

22 that Allstate, in reliance on these misrepresentations or omissions, paid plaintiff more than

23 $15,000 on the insurance claim.  (Id. ¶¶ 1-2, 4.)  Allstate alleges that "[a]s a result of the

24

25     [4] The Notice of Removal does not attach plaintiff's original complaint and intimates that the
   First Amended Complaint was the first pleading filed in the Superior Court.  (See Notice of Removal

26 at 1.)

1   misrepresentations of plaintiff, under the policy, it is void and defendant is entitled to

2   reimbursement of the funds paid to plaintiff."  (Id. ¶ 5.)

3   II.    LEGAL STANDARDS

4            Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for

5   summary judgment, identifying each claim or defense--or the part of each claim or defense--on

6   which summary judgment is sought."  It further provides that "[t]he court shall grant summary

7   judgment if the movant shows that there is no genuine dispute as to any material fact and the

8   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5]  A shifting burden of

9   proof governs motions for summary judgment under Rule 56.  Nursing Home Pension Fund,

10  Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).

11  Under summary judgment practice, the moving party

12           always bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
13           pleadings, depositions, answers to interrogatories, and admissions
             on file, together with the affidavits, if any," which it believes
14           demonstrate the absence of a genuine issue of material fact.

15  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).

16  "Where the non-moving party bears the burden of proof at trial, the moving party need only

17  prove that there is an absence of evidence to support the non-moving party's case."  In re Oracle

18  Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ.

19  P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not

20  have the trial burden of production may rely on a showing that a party who does have the trial

21  burden cannot produce admissible evidence to carry its burden as to the fact").

22           If the moving party meets its initial responsibility, the opposing party must

23  establish that a genuine dispute as to any material fact actually exists.  See Matsushita Elec.

24  ─────────────────

25           [5]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
     2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56,
26   "[t]he standard for granting summary judgment remains unchanged."

1  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary

2  judgment, the opposing party must demonstrate the existence of a factual dispute that is both

3  material, i.e., it affects the outcome of the claim under the governing law, see Anderson v.

4  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores

5  Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such

6  that a reasonable jury could return a verdict for the nonmoving party,'"  FreecycleSunnyvale v.

7  Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A

8  party opposing summary judgment must support the assertion that a genuine dispute of material

9  fact exists by: "(A) citing to particular parts of materials in the record, including depositions,

10  documents, electronically stored information, affidavits or declarations, stipulations . . . ,

11  admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

12  not establish the absence or presence of a genuine dispute, or that an adverse party cannot

13  produce admissible evidence to support the fact."[6]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

14  the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

15  Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

16          In resolving a motion for summary judgment, the evidence of the opposing party

17  is to be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may

18  be drawn from the facts placed before the court must be viewed in a light most favorable to the

19  opposing party.  See Matsushita, 475 U.S. at 587; In re Oracle Corp. Sec. Litig., 627 F.3d at 387.

20  However, to demonstrate a genuine factual dispute, the opposing party "must do more than

21  simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

22  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

23  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

24

25          [6]  "The court need consider only the cited materials, but may consider other materials in the
   record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support
   or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ.

26  P. 56(c)(2).

III.   ALLSTATE'S REQUEST FOR JUDICIAL NOTICE

Along with its reply briefs in support of the pending motions, Allstate filed a request for judicial notice (Dkt. No. 92).  Offering no substantive argument and relying only a conclusory citation to Federal Rule of Evidence 201, Allstate requests that the court take judicial notice of the following facts:

> 1.   In the Affidavit filed by plaintiff in opposition to the subject motions, plaintiff stated that he has paid $114,816.44 to make repairs. That is the amount stated in the estimate prepared by AYS Consulting, Inc., a copy of which is attached to the Supplemental Affidavit of Dennis M. Campos as Exhibit F.
>
> 2.   Melinda Smith[7] is the principle [sic] of AYS Consulting, Inc. which became a licensed contractor in the State of California on July 7, 2008. See Exhibit G attached to the Supplemental Affidavit of Dennis M. Campos filed in support of the subject motions.
>
> 3.   Melinda Smith and plaintiff Jacob Winding share an interest in a vessel which was the subject of an Admiralty action filed in this Court and it is requested that judicial notice be taken of Case No.: 10-CV-1916-JAM-EFB filed in the United States District Court, Eastern District of California.

(Req. for Judicial Notice at 1-2.)  Plaintiff filed objections to Allstate's request for judicial notice (Dkt. No. 99).

In relevant part, Federal Rule of Evidence 201(b) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

In regards to the first fact of which Allstate asks the court to take judicial notice, pertaining to the amount plaintiff claims to have paid for repairs as stated in an estimate, this fact is not the proper subject of judicial notice.  Such a fact is plainly not "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

---

[7]  Allstate's repeated reference to "Melinda Smith" appears to be a typographical error.  The documents relied upon by Allstate refer to "Belinda Latrice Smith."

1  determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.

2  Evid. 201(b).  Accordingly, Allstate's request is denied as to this fact.

3          The undersigned denies Allstate's request that the court take judicial notice of the

4  fact that Belinda Smith is principal of AYS Consulting, Inc.  In support of its request, Allstate

5  relies on a web page printout from the Contractors State Licensing Board.  (See Campos Suppl.

6  Decl., Ex. G, Dkt. No. 93.)  At the outset, it is unclear why Allstate cannot simply argue the

7  relevance or materiality of this evidence in connection with its motions.  There is no material

8  reason to consider this a "judicially noticeable" fact.  In any event, the internet printout relied on

9  by Allstate contains numerous disclaimers, including that "[d]ue to workload, there may be

10  relevant information that has not yet been entered onto the Board's license database."  (Id., Ex. G

11  at 1.)  Accordingly, the printout, and the facts derived therefrom, are not capable of accurate and

12  ready determination by resort to sources whose accuracy cannot reasonably be questioned.

13  Therefore, Allstate's request is denied as to this fact.

14          Finally, the undersigned denies Allstate's request that the court take judicial

15  notice of the fact that "Melinda Smith and plaintiff Jacob Winding share an interest in a vessel

16  which was the subject of an Admiralty action filed in this Court," and the district court case from

17  which that fact is derived.[8]  As an initial matter, Allstate does not allude to a particular document

18  filed in PNC Bank, N.A. v. Smith et al., 2:10-cv-01916 JAM EFB (E.D. Cal.), of which Allstate

19  would have the court take notice.  Nor does Allstate cite to a document from PNC Bank, N.A. v.

20  Smith that establishes with certainty that Belinda Smith and plaintiff share an interest in a vessel.

21  Instead, the only document filed in PNC Bank, N.A. v. Smith that is also appended to Allstate's

22  counsel's supplemental declaration in this case consists of an application for relief and a

23  memorandum of points and authorities that contain an attorney's arguments, not judicially

24

25          [8]  The undersigned also notes that Allstate appears to raise this fact for the sole purpose of
impugning the credibility of plaintiff and plaintiff's evidence submitted in opposition to the motions
26  for summary judgment.  Of course, at the summary judgment stage, the court may not weigh
evidence or adjudge the credibility of witnesses or evidence.

1    noticeable facts.  (See Campos Suppl. Decl., Ex. H.)  Moreover, although the court may take

2    judicial notice of records from other federal actions, see, e.g., Bias v. Moynihan, 508 F.3d 1212,

3    1225 (9th Cir. 2007); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir.

4    2006); Shaw v. Hahn, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995), it may not take notice of findings

5    of fact in those other cases, see Wyatt v. Terhune, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003)

6    ("[W]e have held that taking judicial notice of findings of fact from another case exceeds the

7    limits of [Federal Rule of Evidence] 201.").  Accordingly, Allstate's request for judicial notice is

8    denied.

9    IV.   PLAINTIFF'S EVIDENTIARY OBJECTIONS

10           In opposing Allstate's motions for summary judgment and partial summary

11   judgment, plaintiff filed evidentiary objections that attack the declaration of Fred Satariano filed

12   in support of Allstate's motions.  (Pl.'s Evid. Objections, Dkt. No. 82; see also Satariano Decl.,

13   Dkt. No. 73.)  Mr. Satariano is a former employee of the Code Enforcement Division of the City

14   of Stockton, who investigated an October 17, 2007 complaint concerning the condition of the

15   Property.  (See Satariano Decl. ¶¶ 1-2.)  Mr. Satariano declares that he visited or inspected the

16   Property on several dates between October 26, 2007, and July 14, 2008.  (See id. ¶¶ 3-4, 7-11.)

17   The undersigned sustains one of plaintiff's evidentiary objections on the basis of Allstate's

18   concession and overrules the remaining objections.

19           First, plaintiff objects to Mr. Satariano's statement that when he visited the

20   Property on October 26, 2007, "[t]here was a partially dismantled HVAC unit on the roof of the

21   house." (Satariano Decl. ¶ 3.)  Plaintiff argues, in reliance on provisions of the California Code

22   of Evidence—not the Federal Rules of Evidence—that Mr. Satariano's statement is irrelevant

23   because plaintiff "has already stipulated that an old HVAC resided on the roof." (Pl.'s Evid.

24   Objections at 2.)  The undersigned overrules plaintiff's objection on the grounds that Mr.

25   Satariano's statement is relevant and admissible under the Federal Rules of Evidence.  In regards

26   to Allstate's motion for summary judgment on its counterclaim, Allstate argues that plaintiff

9

1   never installed a new HVAC unit prior to the date of the alleged theft, that an old HVAC unit

2   remained on the roof after the theft, that plaintiff misrepresented to Allstate that he had installed

3   a newer unit that was subsequently stolen, and that such misrepresentation voided the Policy.

4   Mr. Satariano's statement tends to establish that an old HVAC unit was on the roof of the house

5   prior to the date of the alleged theft, which is central to Allstate's argument in support of its

6   counterclaim.  It is of no matter that plaintiff purportedly "stipulated" to this fact.

7           Second, plaintiff objects on hearsay grounds to statements made by plaintiff's

8   former tenants at the Property, which are restated in Mr. Satariano's declaration.  The hearsay

9   statements were made by tenants at the property on October 26, 2007, and concerned whether a

10  new HVAC unit had been delivered to the house:

11          The tenants told me that there were extensive problems in the premises
            and that they were moving out.  There was a partially dismantled HVAC
12          unit on the roof of the house.  I was told that a new unit had been delivered
            but that the air conditioner was taken back by the contractor because he
13          was not paid.

14  (Satariano Decl. ¶ 3.)  Defendant concedes that "[t]he statement to Mr. Satariano by the tenants

15  who were moving out reciting that a new air conditioning unit had been delivered but taken away

16  by the contractor because he was not paid does constitute hearsay."  (Allstate's Reply to Evid.

17  Objections at 1, Dkt. No. 93, Doc. No. 93-1.)  On the basis of Allstate's concession, plaintiff's

18  objection is sustained.

19          Third, plaintiff objects to the numerous photographs appended to Mr. Satariano's

20  declaration on the grounds that "[a]ll of the photos . . . presented are not of Plaintiff's property

21  located at 1127 West Harding Way, Stockton [*sic*] California 95203."  (Pl.'s Evid. Objections

22  at 2.)  At the hearing, plaintiff clarified his argument in part.  He stated that his objection is

23  primarily that Allstate did not attach to Mr. Satariano's declaration photographs showing all

24  aspects of the Property, especially the entire roof of the house on the property.  However, Allstate

25  was entitled to choose which evidence it filed in support of its motions and was under no

26  obligation to produce evidence to suit plaintiff's preferences.  Plaintiff also stated at the hearing

that some of the pictures are not actually of the Property, but was unable to identify which particular photographs are not of the Property.  Without more from plaintiff, the undersigned overrules plaintiff's objection to the photographs taken by Mr. Satariano.

Finally, plaintiff asserts a conclusory objection to Mr. Satariano's entire declaration on the grounds that "Mr. Satariano's Affidavit are [*sic*] full of convulsionary arguments, hearsay statements, and unfounded self-serving declarations."  (Pl.'s Evid. Objections at 2.)  The undersigned overrules this generic objection, which lacks detail and argument supported by relevant legal authority.[9]  In short, a party moving for summary judgment is entitled to rely on declarations of third party witnesses that are based on personal knowledge.  See Fed. R. Civ. P. 56(c)(4).

V.      ALLSTATE'S MOTION ADDRESSED TO PLAINTIFF'S CLAIMS

Allstate moves for partial summary judgment in regards to plaintiff's First Amended Complaint.  Specifically, Allstate's notice of motion reflects Allstate's request for summary judgment as to plaintiff's: (1) breach of contract claim; (2) insurance bad faith claim; and (3) request for punitive damages.  (Notice of Alt. Mot. & Alt. Mot. for Partial Summ. J. at 1-2, Dkt. No. 60.)  Contrary to the notice of motion and motion, Allstate's memorandum of points and authorities *also* seeks summary judgment as to plaintiff's fraud claim.  (See Allstate's Memo. of P. & A. Re: Pl.'s Claims at 2, 14-15, Dkt. No. 60, Doc. No. 60-1.)  The undersigned addresses all four aspects of Allstate's motion below.

A.      Plaintiff's Breach of Contract Claim

Allstate first moves for summary judgment on plaintiff's breach of contract claim insofar as plaintiff's claimed damages for vandalism are concerned.  Specifically, Allstate argues that it properly denied plaintiff's insurance claim for damages resulting from vandalism because

---

[9]  At the hearing, the undersigned attempted to clarify what plaintiff meant by the term "convulsionary."  Plaintiff's explanation was not helpful, and it remains unclear what he meant by that objection.  In any event, the conclusory nature of plaintiff's objection is dispositive.

1    the Policy, by its express language, does not cover damage resulting from vandalism if the

2    Property was vacant and not under construction for the 30 days immediately prior to the date of

3    occurrence of the vandalism.  Plaintiff responds that he was occupying the Property at or around

4    the time of the vandalism.  The undersigned concludes that a genuine dispute of material fact

5    exists in regards to the breach of contract claim.[10]

6              Allstate relies on an exclusion in the Policy, which pertains to non-coverage of

7    vandalism and malicious mischief.  That exclusion from coverage provides that Allstate does not

8    cover loss consisting of, or caused by, the following:

9              Vandalism or Malicious Mischief if **your dwelling** is vacant or
             unoccupied for more than 30 consecutive days immediately prior to the
10             vandalism or malicious mischief.  A **dwelling** under construction is not
             considered vacant or unoccupied.

11

12   (Davis Decl., Ex. A at A-12, Dkt. No. 62.)  The terms or phrases "unoccupied," "vacant," and

13   "under construction" are not further defined in the Policy, and Allstate has made no argument

14   regarding the proper construction of these terms beyond their plain meaning.

15             Allstate contends that the court may conclude, as a matter of law, that the Property

16   was unoccupied and not under construction for the 30 consecutive days immediately prior to the

17   vandalism that allegedly occurred on or about July 12, 2008.  Thus, Allstate necessarily moves

18   for summary judgment on the grounds that the Property was unoccupied and not under

19   construction between approximately June 12, 2008, and July 12, 2008.  The undersigned

20   addresses the issues of occupancy and construction in turn.

21             1.    Whether the Property Was "Unoccupied" Or "Vacant"

22             In regards to whether the Property was unoccupied or vacant, plaintiff contends

23   that he occupied the Property during the relevant time.  Plaintiff's declaration submitted in

24

25   [10]  Under California law, "[t]he standard elements of a claim for breach of contract are (1) the
     contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and
     (4) damage to plaintiff therefrom."  See, e.g., Abdelhamid v. Fire Ins. Exch., 182 Cal. App. 4th 990,
26   999, 106 Cal. Rptr. 3d 26, 32-33 (Ct. App. 2010) (citations and quotation marks omitted).

1   support of his written opposition states under penalty of perjury that he resided at the Property

2   until he rented the Property out in July 2007.  (Winding Decl. ¶ 4, Sept. 15, 2011, Dkt. No. 78.)

3   Plaintiff declares that his tenants at the time refused to pay rent for the months of September and

4   October 2007.  (Id. ¶ 6.)  Plaintiff further declares that his tenants moved out of the Property on

5   or about October 29, 2007, that the City of Stockton "cited" the Property, and that he moved back

6   into the home on the Property in November 2007.  (Id. ¶¶ 9-10.)  Plaintiff declares that he moved

7   back into the home "because the house has just recently been remodeled [*sic*] kitchen, counter

8   tops, paint, flooring, etc."  (Id. ¶ 10.)  In regards to the claimed vandalism, plaintiff declares that

9   when he "arrived back home on or about July 11, 2008 [his] home had been broken into and

10  vandalized."  (Id. ¶ 21.)  Plaintiff claims that he called the police and reported the break in.  (Id.

11  ¶ 22.)  He states that he made an insurance claim on July 12, 2008.  (Id. ¶ 24.)  He declares that

12  he removed the rest of his personal belongings from the home in August 2008.  (Id. ¶ 25.)

13       In response to plaintiff's declaration, Allstate argues that plaintiff's declaration is

14  a sham and that the statements therein are misrepresentations designed to create a genuine

15  dispute of material fact to defeat Allstate's motion for summary judgment.  (See Allstate's Reply

16  Br. at 2-6, Dkt. No. 91.)  It argues that under the "sham affidavit" rule, plaintiff's declaration is

17  contradicted by plaintiff's own deposition, which commenced on July 28, 2010, and was

18  completed on November 23, 2010.

19       In the Ninth Circuit, the sham affidavit rule generally provides that "'a party

20  cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'"  Van

21  Asdale v. Int'l Gam Tech., 577 F.3d 989, 998 (9th Cir. 2009) (citing Kennedy v. Allied Mut. Ins.

22  Co., 952 F.2d 262, 266 (9th Cir. 1991)).  The Ninth Circuit Court of Appeals has warned that the

23  sham affidavit rule should be applied with caution.  Id.  The Court of Appeals has placed two

24  limitations on the rule:

25       [W]e have fashioned two important limitations on a district court's
         discretion to invoke the sham affidavit rule.  First, we have made clear that
26       the rule does not automatically dispose of every case in which a

1
2
3
4
5
6

> contradictory affidavit is introduced to explain portions of earlier
> deposition testimony; rather, the district court must make a factual
> determination that the contradiction was actually a "sham."  Second, our
> cases have emphasized that the inconsistency between a party's deposition
> testimony and subsequent affidavit must be clear and unambiguous to
> justify striking the affidavit.  Thus, the non-moving party is not precluded
> from elaborating upon, explaining or clarifying prior testimony elicited by
> opposing counsel on deposition [and] minor inconsistencies that result
> from an honest discrepancy, a mistake, or newly discovered evidence
> afford no basis for excluding an opposition affidavit.

7    Id. at 998-99 (citations and quotation marks omitted).  The Court of Appeals has emphasized that

8    "the sham affidavit 'rule does not automatically dispose of every case in which a contradictory

9    affidavit is introduced to explain portions of earlier deposition testimony.'"  Id. (citing Kennedy,

10   952 F.2d at 266-67).

11                  Here, Allstate cites to several lengthy excerpts from plaintiff's deposition that

12   purportedly contradict plaintiff's declaration offered in opposition to the motion for summary

13   judgment.  (See Allstate's Reply Br. at 2-6 (citing Winding Depo. at 4:14-25, 15:10-16:8, 16:20-

14   25, 22:8-9, 34:9-35:19, 36:3-37:3, 62:7-65:2).)  There is no doubt that the transcript of plaintiff's

15   deposition is replete with equivocal testimony regarding whether plaintiff resided at the Property

16   and, if so, when he resided or stayed at the Property relative to the date of the vandalism.

17   Plaintiff repeatedly testified that he could not recall dates, especially those pertaining to

18   occupancy of the Property around the time of the vandalism.  However, plaintiff testified that he

19   owned four properties and a yacht at which he lived "off and on" around the time of the

20   vandalism.  (See Winding Depo. at 36:15-24, 37:9-14.)  He also testified that he was not

21   physically present at the Property during the perpetration of the vandalism, but specifically

22   denied that the house at the Property was vacant at the time of the theft.  (See id. at 33:19-34:17.)

23   Although plaintiff's deposition testimony is equivocal and might ultimately be used at trial to

24   undermine plaintiff's credibility, none of the excerpts of his deposition testimony cited by

25   Allstate clearly and unambiguously contradicts the later-filed declaration.  Exercising the

26   requisite caution in applying the sham affidavit rule, plaintiff's declaration under penalty of

1   perjury can be reasonably construed as simply explaining his previous, unclear deposition

2   testimony.  Accordingly, the undersigned cannot find that plaintiff's declaration should be

3   stricken under the sham affidavit rule.

4           Allstate argues more than the sham affidavit rule in support of its motion; it

5   marshals several other pieces of circumstantial evidence suggesting that the Property was

6   unoccupied within 30 days prior to the alleged vandalism.  First, Allstate relies on the deposition

7   testimony of its claim adjuster, Jess Molina, who testified that when he visited plaintiff at the

8   Property on August 11, 2008, to review the claimed damages, the main power to the house was

9   off.  (Molina Depo. at 29:21-22.)  He further testified that plaintiff shared with him that the

10  power had been off "for several months and that the tenants had moved out several months ago."

11  (Id. at 33:2-5.)  Additionally, Mr. Molina testified that after his meeting with plaintiff, plaintiff

12  transmitted to Mr. Molina a Pacific Gas & Electric account statement, which reflected that the

13  account was closed on October 31, 2007.[11]  (Id. at 57:17-25, 60:4-17.)

14          Second, Allstate relies on the declaration of Fred Satariano, who investigated an

15  October 17, 2007 complaint concerning the Property in his capacity as an employee of the Code

16  Enforcement Division of the City of Stockton.  (See Satariano Decl. ¶¶ 1-2.)  Mr. Satariano

17  declares that he visited or inspected the Property on October 26, 2007; October 29, 2007; March

18  25, 2008; April 15, 2008; July 10, 2008; July 11, 2008; and July 14, 2008.[12]  (See id. ¶¶ 3-4, 7-

19  11.)  During one of Mr. Satariano's visits to the Property on October 29, 2007, he observed a

20  posting that stated: "DO NOT ENTER UNSAFE TO OCCUPY."  (Id. ¶ 4 & Exs. PP-QQ.)  He

21  ultimately declared: "At no time during my involvement with this property did I see any

22

23              [11]  Allstate did not file a copy of the account statement with its motion.

24              [12]  Plaintiff's declaration states that on three occasions in March 2008, plaintiff "came outside
       [of his] home" to find Mr. Satariano walking around the outside of the home and taking pictures.
       (Winding Decl. ¶ 17.)  Plaintiff declares that he argued with Mr. Satariano and asked Mr. Satariano
25     "not to come around [his] property."  (Id.)  Plaintiff declares that he again "caught Frank [sic]
       Satariano walking around and taking pictures of [his] property in the month of April, 2008."  (Id.
26     ¶ 20.)

15

1   indication that the property was inhabited after the tenants moved out in October 2007." (Id.

2   ¶ 12.)

3          Third, Allstate relies on a letter dated August 18, 2009, which plaintiff sent to the

4   California Department of Insurance in connection with the adjustment and settlement of his

5   claim by Allstate. (Campos Decl., Ex. D, Dkt. No. 61; see also Winding Depo. at 101:22-102:8

6   (verifying that plaintiff prepared and signed the August 18, 2009 letter).) Plaintiff's letter, which

7   was an exhibit to plaintiff's deposition, is entitled "Request for Assistance" and consisted of a

8   complaint about Allstate's and Mr. Molina's handling of plaintiff's insurance claim. (Id.)

9   Plaintiff's letter states that on October 29, 2007, the Property "was cited by the city as unsafe to

10  occupy." (Id. at 2.) The letter further states that plaintiff was cited for having two bathrooms

11  that were not built to code, was ordered to tear down the bathrooms, and that by reason of having

12  only two bathrooms to begin with, the residence was declared "unlivable/unsafe." (Id.)

13  Plaintiff's letter states that he submitted architectural plans for approval on February 4, 2008, but

14  that the plans were not accepted until September 17, 2008. (Id.)

15         Upon review of the parties' arguments and evidence, the undersigned concludes

16  that there is a genuine dispute of material fact regarding whether the Property was vacant or

17  unoccupied during the 30 consecutive days immediately prior to the date that the Property was

18  allegedly vandalized. The parties have submitted conflicting evidence in this regard, and

19  granting summary judgment in the face of this conflicting evidence would require the

20  impermissible weighing of that evidence. The evidence cited by Allstate, which indicates that

21  the power to the house was off for several months and that the house was deemed unlivable by

22  the City of Stockton, is consistent with its argument that nobody was living at the Property

23  around near the time of the vandalism. However, Allstate's evidence does not substantiate that,

24  as a matter of law, the Property was unoccupied for 30 consecutive days immediately prior to the

25  ////

26  ////

claimed vandalism.[13]  Plaintiff declaration states that plaintiff moved into the home at the

Property in November 2007, and indicates that plaintiff was occupying the Property in some

manner at or around the time of the alleged vandalism.  The undersigned finds that plaintiff's

deposition testimony and declaration create a genuine dispute of material fact as to whether,

under the terms of the Policy, the Property was "vacant or unoccupied for more than 30

consecutive days immediately prior to the vandalism or malicious mischief."  Even assuming that

the Property had no power and had been cited as "unsafe to occupy" because of the deficiently

built bathrooms, there is no indication under the Policy that such circumstances triggered the

vacancy exclusion in the Policy.  The terms "unoccupied" and "vacant" are not specifically

defined in the Policy, and Allstate has not argued a construction of those terms that would render

the exclusion applicable under the circumstances of this case.  In short, even if the Property

lacked main power and had been deemed unsafe to occupy, plaintiff could have nevertheless

been occupying the Property in some manner.  Accordingly, the undersigned recommends that

Allstate's motion for summary judgment be denied as to plaintiff's breach of contract claim.

2.     Whether the Property Was "Under Construction"

Allstate also argues that the Property was not "under construction" during the 30

consecutive days immediately prior to the date of the alleged vandalism and, accordingly, the

construction exception to the vacancy exclusion does not apply.  If the district judge assigned to

this case agrees with the undersigned's conclusion that a genuine dispute of material fact exists

regarding whether the Property was vacant or unoccupied, she need not address the "under

construction" exception to the vacancy exclusion.  However, for the sake of completeness, the

undersigned briefly addresses that exception and concludes that the Property was not "under

---

[13]  The undersigned notes that Allstate's argument is premised on a defense to the claimed
breach of contract.  Allstate bears the ultimate burden of proving that defense at trial and,
accordingly, its burden in connection with a motion for summary judgment is higher than it would
be if plaintiff bore the burden at trial on this issue.  Even if Allstate did not bear that burden, it is
evident that a genuine dispute of material fact exists such that the grant of summary judgment would
not be proper.

1  construction."

2        In his opposition to Allstate's motion for summary judgment, plaintiff does not

3  clearly argue that the "under construction" exception to the vacancy exclusion applies in this

4  case.  Nevertheless, there are three sets of facts raised by the parties' briefing and evidence that

5  call into question whether the Property was under construction at the time of the alleged

6  vandalism.  First, plaintiff appeared to believe that the Property was under construction between

7  February 8, 2008, and at least September 17, 2008, because the City of Stockton was reviewing

8  architectural plans designed to remedy the two bathrooms that were not built to code and had in

9  turn rendered the Property unsafe to occupy.  As noted above, plaintiff submitted a letter, dated

10  August 18, 2009, to the Department of Insurance.  (Campos Decl., Ex. D.)  Plaintiff's letter states

11  that he submitted architectural plans for approval on February 4, 2008, but that the plans were

12  not accepted or permitted until September 17, 2008.[14]  (Id. at 2; see also Winding Decl. ¶¶ 14-15;

13  Winding Depo. at 106:5-20.)  Plaintiff's letter states: "This information should be interpreted as

14  the subject property being under construction at the time of the claim/incident occurred."

15  (Campos Decl., Ex. D at 2.)

16        Second, plaintiff filed a sworn affidavit of Okey Frank Ozoh, a contractor who

17  met with plaintiff at the Property on May 29, 2008, to discuss remediation of the construction

18  deficiencies.  (See Ozoh Aff. ¶¶ 1-7, 14, 16, Dkt. No. 81.)  Mr. Ozoh prepared an estimate of the

19  scope of work in November 2008, but the company for which Mr. Ozoh worked ultimately did

20  not complete any work for plaintiff.  (Id. ¶¶ 30-31.)

21        Third, Allstate submitted evidence that Mr. Satariano conducted an "abatement

22  job walk" on or around the time of the incident.  Mr. Satariano declared:

23        On July 11, 2008, I had an abatement job walk at the premises with Alan
      Spragg of Spragg Construction.  Abatement was completed by Alan

24

25      [14]  Plaintiff testified at his deposition that he could not recall whether any work had been

26  performed on the Property prior to the time that the plans were accepted or permitted by the City of
Stockton.  (See Winding Depo. at 106:21-23.)

1          Spragg at a cost of $450.  Abatement included removing debris and junk
2          and appliances that had been in the yard since the date of my first visit.

3  (Satariano Decl. ¶ 10.)  However, Mr. Satariano further declared that after the Property was listed

4  as unsafe to occupy in October 2007, "there was no work done to the premises through July 14,

5  2008 except for the one day of abatement by Spragg Construction."  (Id. ¶ 12.)

6          Allstate contends that although the City of Stockton appears to have been

7  reviewing plaintiff's architectural plans during the period of June 12, 2008, through July 12,

8  2008, such plan review does not constitute "construction" within the meaning of the Policy.  It

9  further argues that a single day of debris abatement does not constitute construction.  Allstate

10  relies on the California Supreme Court's decision in TRB Investments Inc. v. Fireman's Fund

11  Insurance Co., 40 Cal. 4th 19, 145 P.3d 472 (2006), which addressed the phrase "under

12  construction" in the context of a vacancy exclusion similar to the one at issue here.  Id. at 24, 145

13  P.3d at 474 (stating that the construction exception to the vacancy exclusion provided that

14  "'Buildings under construction are not considered vacant'").  Although the California Supreme

15  Court was ultimately tasked with resolving whether the "under construction" language in the

16  vacancy exclusion pertained only to the erection of a new structure versus other types of

17  construction, the Court provided guidance for more generally interpreting the phrase "under

18  construction" in the policy at issue.  In TRB Investments Inc., the California Supreme Court

19  summarized its holding as follows:

20          As used in the insurance policy here, the word "construction" cannot
           reasonably be understood to be limited only to the erection of a new
21          structure.  Rather, the term contemplates all building endeavors, whether
           classified as new construction, renovations, or additions, which require the
22          substantial and continuing presence of workers at the premises.  This
           standard serves the purposes underlying the vacancy exclusion, which is
23          premised upon the recognition that unoccupied properties face an
           increased risk of damage, whether from property-related crime such as
24          theft or vandalism or from building damage or loss related to neglect.  If,
           however, a construction project results in the continuous and substantial
25          presence of workers on the property, then the underlying justifications for
           the vacancy exclusion no longer exist, a point recognized by the inclusion
26          of an "under construction" exception to the general vacancy exclusion.

19

1  Id. at 22-23, 145 P.3d at 474.

2          Here, the construction activity at the Property was at best sporadic.  The on-site

3  work consisted of plaintiff's initial meeting with a contractor on May 29, 2008, and one day of

4  debris abatement on July 11, 2008.  This level of activity cannot, as a matter of law, be

5  considered to fall within the definition of "under construction" provided in TRB Investments

6  Inc., which dealt with a similar vacancy exclusion to the one at issue here.  In this case, workers

7  were present at the Property on only two occasions, and on only one occasion performed any

8  actual work that could be construed as construction.  Accordingly, to the extent that the court

9  need reach the issue, defendant's argument that plaintiff's Property was not under construction is

10  well-taken.  See TRB Investments Inc., 40 Cal. 4th at 31, 145 P.3d at 479 (remanding for further

11  proceedings under the newly announced standard, but noting that if only a handful of workers

12  were at the premises at any given time to perform minor tasks and the presence of workers was

13  sporadic at best, the entry of summary judgment would be appropriate for the defendant).

14          B.      Plaintiff's Insurance Bad Faith Claim

15          Allstate next argues that it is entitled to summary judgment on plaintiff's

16  insurance bad faith claim on two separate grounds.  First, Allstate argues that plaintiff made

17  misrepresentations of material facts to it in connection with the insurance claim and thus voided

18  the Policy.  That argument overlaps with the discussion of Allstate's counterclaim and is thus

19  discussed further below.  In short, the undersigned concludes below that Allstate is not entitled to

20  summary judgment in regards to its claim that plaintiff made misrepresentations to Allstate that

21  voided the Policy.

22          Second, Allstate argues that it is entitled to summary judgment on the basis of a

23  rule of California insurance law referred to as the "genuine dispute" rule or "genuine issue" rule,

24  which permits a court to enter judgment to an insurer as a matter of law where there is a genuine

25  dispute as to the insurer's liability.  Plaintiff failed to address this argument at all in either his

26  memorandum of points and authorities or his declaration.  The undersigned recommends that the

1  court grant Allstate's motion for summary judgment in regards to plaintiff's insurance bad faith

2  claim on the basis of the genuine dispute rule.

3       "An insurer is liable for breach of the implied covenant of good faith and fair

4  dealing if it acted unreasonably in denying coverage." <u>Lunsford v. Am. Guar. & Liab. Ins. Co.</u>,

5  18 F.3d 653, 656 (9th Cir. 1994).  "In order to establish a breach of the implied covenant of good

6  faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the

7  policy were withheld; and (2) the reason for withholding benefits was unreasonable or without

8  proper cause." <u>Guebara v. Allstate Ins. Co.</u>, 237 F.3d 987, 992 (9th Cir. 2001).  The Ninth

9  Circuit Court of Appeals has stated that the "key to a bad faith claim is whether or not the

10 insurer's denial of coverage was reasonable." <u>Id.</u>

11      The question of reasonableness is ordinarily a question of fact and thus not

12 ordinarily appropriate for resolution at summary judgment.  <u>See</u> <u>Amadeo v. Principal Mut. Life</u>

13 <u>Ins. Co.</u>, 290 F.3d 1152, 1161 (9th Cir. 2002) (stating that the "reasonableness of an insurer's

14 claims-handling conduct is ordinarily a question of fact") (citations and quotation marks

15 omitted).  However, the Court of Appeals has held that under California law, "a court can

16 conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as

17 there existed a genuine issue as to the insurer's liability." <u>Lunsford</u>, 18 F.3d at 656.  Generally,

18 under California's "genuine dispute" or "genuine issue" rule, an "insurer denying or delaying the

19 payment of policy benefits due to the existence of a genuine dispute with its insured as to the

20 existence of coverage liability or the amount of the insured's coverage claim is not liable in bad

21 faith even though it might be liable for breach of contract."[15]  <u>Trishan Air, Inc. v. Fed. Ins. Co.</u>,

22

23      [15]  A judge of the Ninth Circuit Court of Appeals has understandably lamented the name of
   this rule in the context of a motion for summary judgment:

24

25      I note at the outset that the "genuine issue" rule is not well-named.  Courts
       usually speak of "genuine issues" in the context of summary judgment: If a

26      party raises a genuine issue of material fact, summary judgment is
       inappropriate.  The "genuine issue" rule mandates the opposite result: If an

1   635 F.3d 422, 434 (9th Cir. 2011) (citation and quotation marks omitted).  A grant of summary

2   judgment under the genuine dispute rule is not limited to genuine disputes of law, but may also

3   be appropriate where there is a genuine dispute of fact.  See Guebara, 237 F.3d at 993 ("No Ninth

4   Circuit case, however, has limited the genuine issue as to coverage rule to legal disputes.").[16]

5          Here, Allstate contends, largely on the basis of adjuster Jess Molina's deposition

6   testimony, that there was a genuine dispute or issue as to the propriety of plaintiff's insurance

7   claim.  As an initial matter, there was, and still is, a genuine dispute regarding the propriety of

8   coverage for the claimed vandalism given that vacancy exclusion might ultimately apply to

9   plaintiff's claim.  As recounted above, the parties have disputed whether that exclusion applies,

10  and the undersigned concludes that a genuine dispute of material fact—under the standards

11  governing motions for summary judgment—exists on that point.  For the purpose of the

12  insurance bad faith claim, this dispute is genuine and warrants the grant of summary judgment.

13         Additionally, and more directly argued by Allstate, Mr. Molina investigated

14  plaintiff's claim and denied it on the basis of the information available to Mr. Molina.  Plaintiff

15  sought reimbursement for appliances and materials he allegedly installed prior to the vandalism

16

17              insurer can demonstrate a "genuine issue" as to its liability, a district court
                can conclude as a matter of law that an insurer's denial of a claim is not
18              unreasonable" and can grant summary judgment to the insurer.  The name of
                the "genuine issue" rule thus invites confusion with the standard for granting
19              summary judgment.

20  Guebara, 237 F.3d at 997 n.1 (Fletcher, J., dissenting) (citations and quotation marks omitted).

21         [16]  Nevertheless, the Court of Appeals has held that summary judgment is not appropriate
    where the plaintiff has "presented sufficient evidence from which a jury could conclude that [the
22  insurer's] denial of benefits to [the insured] was based on a bad faith interpretation of its policy and
    an inadequate investigation into the basis of [the insured's] claim."  Amadeo, 290 F.3d at 1156; see
23  also Trishan Air, Inc., 635 F.3d at 434 n.18 ("The genuine dispute rule does not relieve an insurer
    from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim")
24  (citation and quotation marks omitted).  Additionally, although "the existence of a 'genuine dispute'
    will generally immunize an insurer from liability, a jury's finding that an insurer's investigation of
25  a claim was biased may preclude a finding that the insurer was engaged in a genuine dispute, even
    if the insurer advances expert opinions concerning its conduct." Hangarter v. Provident Life & Acc.
26  Ins. Co., 373 F.3d 998, 1010 (9th Cir. 2004).

1  and theft incident, but was unable or unwilling to produce receipts, invoices, or other documents

2  substantiating the cost of the stolen or destroyed materials.  Allstate was reasonably suspicious of

3  plaintiff's claim that he performed a remodel of the Property that cost in excess of $100,000 prior

4  to the theft and vandalism.  Such suspicion is supported by Mr. Satariano's declaration and the

5  photographs appended thereto, which show a somewhat dilapidated Property and largely do not

6  support plaintiff's remodeling claims.  Most importantly, however, plaintiff has not produced or

7  cited to evidence in the record that Allstate acted unreasonably in terms of plaintiff's insurance

8  bad faith claim; indeed, plaintiff has offered no argument in opposition to this aspect of Allstate's

9  motion.  Additionally, plaintiff has not cited to evidence of an inadequate investigation, bias in

10  Allstate's investigation, or bad faith in interpreting the policy.

11        At bottom, plaintiff may ultimately succeed on his breach of contract claim, but he

12  has not produced evidence of unreasonableness sufficient to withstand summary judgment on his

13  insurance bad faith claim.  Thus, the undersigned recommends that the court grant Allstate's

14  motion for summary judgment in regards to plaintiff's insurance bad faith claim.

15        C.    Plaintiff's Fraud Claim

16        Allstate moves for summary judgment on plaintiff's claim of fraud.  As noted

17  above, Allstate's notice of motion and motion for summary judgment does not seek relief relative

18  to plaintiff's claim of fraud, but its memorandum of points and authorities filed on the same date

19  seeks relief on that claim.  (Compare Notice of Alt. Mot. & Alt. Mot. for Partial Summ. J. at 1-2,

20  with Allstate's Memo. of P. & A. Re: Pl.'s Claims at 2, 14-15.)  The undersigned considers this

21  aspect of Allstate's motion because plaintiff received notice of Allstate's intention to move for

22  summary judgment as to plaintiff's fraud claim upon the filing of Allstate's memorandum.

23        As discussed above, plaintiff's claim of fraud is premised on allegedly false

24  statements made by Jess Molina to plaintiff over the telephone during the claims adjustment

25  period.  (See First Am. Compl. ¶¶ 31-32.)  Plaintiff alleges that Mr. Molina misrepresented that:

26  (1) "Allstate had accepted liability for plaintiff's claim"; (2) "Allstate would negotiate a fair and

1  timely settlement of the amount of plaintiff's claim"; and (3) "plaintiff should proceed with

2  making repairs to the Property because the insurer would promptly and fully reimburse him for

3  the cost."  (See id. ¶¶ 32-33.)  Plaintiff alleges that the "true facts" are that Allstate did not intend

4  to: (a) "honor the Policy or pay plaintiff's claim"; (b) "negotiate a fair and timely settlement of

5  the amount of plaintiff's claim"; and (c) "promptly or fully reimburse the plaintiff for the cost of

6  the repairs tot he Property."  (Id. ¶ 33.)  Plaintiff alleges that "Allstate made the false

7  representations with the intent to induce [plaintiff] to rely on the misrepresentations, and

8  specifically to induce [plaintiff] to engage in protracted settlement negotiations, allow access to

9  the property, submit to an examination, produce documents and information, delay or forego

10 taking legal action to compel Allstate to perform its obligations under the Policy, and to make

11 repairs to the Property."  (Id. ¶ 34.)  He further alleges that he "justifiably relied on the

12 misrepresentations by engaging in protracted settlement negotiations, allowing access to the

13 property, submitting to examination, producing documents and information, delaying legal action

14 to compel Allstate to perform its obligations under the Policy, and making repairs to the Property

15 at his own (un-reimbursed) expense."  (Id. ¶ 35.)

16         Here, Allstate correctly sets forth the elements of fraud under California law.  The

17 elements of an intentional misrepresentation claim under California law are: "(1) a

18 misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's

19 reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage."  Conroy v.

20 Regents of Univ. of Cal., 45 Cal. 4th 1244, 1255, 203 P.3d 1127, 1135 (2009); accord Lazar v.

21 Superior Court, 12 Cal. 4th 631, 638, 909 P.2d 981, 984 (1996).  However, the remainder of

22 Allstate's confusing briefing does not persuasively argue that it is entitled to judgment as a

23 matter of law in regards to plaintiff's fraud claim.

24         Allstate did not meet its initial burden in connection with a motion for summary

25 judgment.  It has not shown an absence of a genuine dispute of fact as to any of the

26 misrepresentations allege by plaintiff.  For example, Allstate has not clearly identified the

specific elements of plaintiff's fraud claim for which Allstate believes plaintiff will be unable to produce supporting evidence.  This failure alone warrants denial of Allstate's motion for summary judgment.

Rather than attack certain elements of the claim of fraud, Allstate argues in rather conclusory fashion that certain evidence weighs against plaintiff's claim.  For example, three of Allstate's arguments consists of the following:

> [O]bviously plaintiff did not refrain from taking legal action as evidenced by the subject lawsuit.[17]  As can be seen from the face of the complaint, plaintiff admitted that he was given a settlement check which belies the contention that Allstate did not intend to pay his claim.  As to the allegation concerning negotiations, please refer to the authorities above discussing the cause of action for bad faith.[18]

(Allstate's Memo. of P. & A. Re: Pl.'s Claims at 15.)  Allstate offers two additional perfunctory arguments in support of its motion.  In short, none of Allstate's terse arguments actually demonstrates, or alleges for that matter, an absence of a genuine dispute of material fact regarding any element of plaintiff's claim.[19]

In short, the undersigned concludes that Allstate failed to meet its initial, low burden to substantiate its entitlement to summary judgment on plaintiff's fraud claim.  Accordingly, the undersigned recommends that Allstate's motion for summary judgment on plaintiff's fraud claim be denied.

////

---

[17]  As stated above, plaintiff's allegation is not that he completely refrained from taking legal action.  Plaintiff alleges that he justifiably relied on Allstate's alleged misrepresentations and thereby *delayed* taking legal action.  (First Am. Compl. ¶ 35.)

[18]  Allstate cites no authority for the proposition that under California law, the "genuine dispute" rule insulates an insurance company from a claim of fraud, as opposed to a claim of insurance bad faith or a breach of the covenant of good faith and fair dealing.

[19]  Moreover, Allstate's separate statement of undisputed facts is essentially unresponsive to the elements of a claim of fraud.  (See Separate Statement of Undisputed Facts at 7, Dkt. No. 60, Doc. No. 60-2.)  Allstate's proposed facts appear to have no bearing on the elements of fraud under California law.

D.    Plaintiff's Request for Punitive Damages

Allstate also moves for summary judgment in regards to plaintiff's request for punitive damages, arguing that plaintiff cannot substantiate his entitlement to punitive damages by clear and convincing evidence.  In regards to plaintiff's bad faith insurance claim, it is evident that because Allstate is entitled to summary judgment as to that claim, it is also entitled to summary judgment as to the corresponding request for punitive damages.  See Am. Cas. Ins. Co. of Reading, Pa. v. Krieger, 181 F.3d 1113, 1123 (9th Cir. 1999) ("If the insurer did not act in bad faith, punitive damages are unavailable").

Whether Allstate is entitled to summary judgment as to plaintiff's request for punitive damages that corresponds to plaintiff's fraud claim presents a closer question.  The undersigned concludes that because Allstate is not entitled to summary judgment on plaintiff's fraud claim, it is a more prudent course to leave the issue of fraud-related punitive damages for trial.  Accordingly, the undersigned recommends that Allstate's motion for partial summary judgment be denied to the extent that plaintiff's request for fraud-related punitive damages is concerned.

VI.    ALLSTATE'S MOTION ADDRESSED TO ITS COUNTERCLAIM

Allstate moves for summary judgment on its counterclaim against plaintiff, which seeks reimbursement of over $15,000 that Allstate already paid to plaintiff on plaintiff's insurance claim.  Allstate alleges that plaintiff willfully concealed or misrepresented material facts concerning the insurance claim and that Allstate, in reliance on these misrepresentations or omissions, paid plaintiff more than $15,000 on the insurance claim.  (See Counterclaim ¶¶ 1-2, 4.)  Allstate alleges that plaintiff's alleged misrepresentations voided the Policy and that, as a result, Allstate is entitled to reimbursement of the funds paid to plaintiff.  (Id. ¶ 5.)

Under California law, an insured's intentional concealment or misrepresentation of a material fact in connection with a claim for insurance benefits permits the insurer to void the contract for insurance.  See, e.g., Cummings v. Fire Ins. Exch., 202 Cal. App. 3d 1407, 1416-19,

1  249 Cal. Rptr. 568, 573-74 (Ct. App. 1988); see also Ram v. Infinity Select Ins., --- F. Supp. 2d --

2  -, No. C 09-2732(JCS), 2011 WL 3240475, at *8 (N.D. Cal. July 29, 2011) ("A fraud and

3  concealment provision in an insurance contract will generally void the policy where an insured

4  attempts to defraud the insurer."); accord Herbert v. State Farm Mut. Auto. Ins. Co., 362 Fed.

5  Appx. 748, 749 (9th Cir. 2010) ("Under California law, an insurer may defend against a breach

6  of contract claim by demonstrating that the insurance policy is void under a fraud or concealment

7  clause.").  In terms of materiality of the false or concealed statement at issue, "if the

8  misrepresentation concerns a subject reasonably relevant to the insured's investigation, and if a

9  reasonable insurer would attach importance to the fact misrepresented, then it is material."

10  Cummings, 202 Cal. App. 3d at 1417, 249 Cal. Rptr. at 573 (emphasis omitted).  Materiality is a

11  mixed question of law and fact that may be only determined "as a matter of law if reasonable

12  minds could not disagree on the materiality of the misrepresentations." Id. The question of

13  intent to defraud the insurer is generally a question of fact.  However, intent to defraud can be

14  determined as a matter of law where there is an admission of lying with the intent to conceal, or

15  it may be implied where "the misrepresentation is material and the insured willfully makes it

16  with knowledge of its falsity." Id. at 1417-18, 249 Cal. Rptr. at 574.

17          The California Legislature has adopted language concerning concealment or fraud

18  that shall appear in the standard form of fire insurance policy for the State of California.[20]  See

19  Cal. Ins. Code § 2071(a).  The standard form provision concerning the voiding of an insurance

20  policy based on acts of concealment or fraud provides:

21                              Concealment, fraud

22          This entire policy shall be void if, whether before or after a loss, the
          insured has willfully concealed or misrepresented any material fact or
23          circumstance concerning this insurance or the subject thereof, or the
          interest of the insured therein, or in case of any fraud or false swearing by
24

---

25          [20]  California Insurance Code § 2070 provides, in relevant part, that "All fire policies on
subject matter in California shall be on the standard form, and, except as provided by this article
26  shall not contain additions thereto."

1        the insured relating thereto.

2   Id.

3        Here, the Policy contains the following statement regarding concealment or fraud:

4        **Concealment Or Fraud**

5        This policy is void if it was obtained by misrepresentation, fraud or
         concealment of material facts.  If it is determined that this policy is void,
6        all premiums paid will be returned to **you** since there has been no coverage
         under this policy.

7
         **We** do not cover any loss or **occurrence** in which any **insured person** has
8        concealed or misrepresented any material fact or circumstance.

9   (Davis Decl., Ex. A at A-10.)  A policy endorsement appended to the Policy includes the exact

10  language provided in California Insurance Code § 2071(a) that is quoted above.  (See Davis

11  Decl., Ex. A at A-36.)[21]

12       Here, Allstate alleges that plaintiff concealed material facts or made material

13  misrepresentations in connection with his insurance claim following the theft and vandalism.  In

14  its moving papers, Allstate contends *only* that plaintiff's misconduct that voided the Policy

15  concerned plaintiff's claim that a newer HVAC unit installed on the roof of the Property had

16  been stolen.  (See Allstate's Memo. of P. & A. Re: Counterclaim at 3-7, Dkt. No. 59, Doc.

17  No. 59-1.)  Although Allstate relates many facts in its memorandum, its discussion of the fraud

18  or concealment is focused on representations regarding the installation of the newer HVAC unit.

19  The entire discussion section of Allstate's memorandum states:

20       As can be seen from the above, plaintiff submitted a false claim in
         connection with an HVAC system at his property.  Plaintiff expressly
21       reported to Allstate insurance adjuster Jess Molina that he had a new
         HVAC system which was stolen on or about July 12, 2008.  There was no
22       such HVAC system at the premises.

23       The premises had been under observation by Fred Satariano of the
         Department of Code Enforcement of the City of Stockton since October of
24       2007.  Photographs were taken on a number of different days.  The only

25  ────────────────────────
         [21]  Allstate does not contend that the Policy is one other than a fire policy that is required to
26  be on the standard form of fire insurance policy mandated by the State of California.

> HVAC unit present was an old, disconnected unit on the roof from October 2007 to and through the date of the alleged theft.  Plaintiff was paid more than $2,900 on the basis of a fraudulent claim for a new HVAC system which, in fact, was not at the premises.
>
> Under the circumstances, the insurance policy is void.  Plaintiff is entitled to make no claim thereunder.  Defendant is entitled to reimbursement of the entire $15,704.85 paid to plaintiff as admitted to by plaintiff in his first amended complaint.

(Id. at 7.)

Before turning to the propriety of Allstate's argument regarding the newer HVAC unit that was allegedly stolen, the undersigned notes that in its reply brief, Allstate raises *for the first time* other purported material misrepresentations that plaintiff allegedly made in connection with pursuing his insurance claim.  Specifically, Allstate argues on reply that plaintiff made material misrepresentations concerning: (1) whether the Property was unoccupied or under construction at the time of the vandalism and theft; and (2) the costs of repairs to the Property. (Allstate's Reply Br. Re: Counterclaim at 4-5, Dkt. No. 90.)  None of these alleged misrepresentations was specifically alleged in Allstate's counterclaim, argued in its opening memorandum of points and authorities concerning the counterclaim, or noted in its separate statement of undisputed facts concerning the counterclaim.  Although plaintiff filed an objection or sur-reply in opposition to Allstate's reply brief (Dkt. No. 97), the undersigned declines to consider Allstate's arguments regarding plaintiff's alleged misrepresentations that were raised for the first time in Allstate's reply brief.  Accordingly, the undersigned's discussion is confined to alleged misrepresentations concerning the HVAC unit.

Returning to concealment or material misrepresentations pertaining to the HVAC unit, Allstate contends that plaintiff falsely claimed that he had installed a new HVAC system on the roof of the home at the Property and that the new HVAC system had been stolen on or about July 12, 2008.  Allstate relies on Jess Molina's deposition testimony that when Mr. Molina visited the Property for the second time to further estimate the covered damage, Mr. Molina saw an old HVAC unit.  (See Molina Depo. at 57:17-58:16.)  Of course, if the new unit had been

1   stolen, it would not have been on the roof at the time of the claims adjustment inspection.  Mr.

2   Molina testified that because it was raining, he was unable to climb onto the roof.  (Molina Depo.

3   at 58:8-9.)

4          Allstate also relies on Fred Satariano's declaration and photographs of the

5   Property, including parts of the roof of the house, taken by Mr. Satariano between October 27,

6   2007, and July 14, 2008.  One photograph that Mr. Satariano took on March 25, 2008, shows a

7   partially dismantled HVAC unit on the roof, but does not show a newer HVAC unit.  (See

8   Satariano Decl., Exs. TT.)  But contrary to Allstate's contention, Mr. Satariano's photographs do

9   not appear to collectively show the entire surface area of the roof.[22]  Moreover, Mr. Satariano's

10  declaration does not state that he ventured onto the roof at any point, and his photographs were

11  taken from the street level.

12         In opposing Allstate's motion, plaintiff contends that a new HVAC unit was

13  indeed installed, but that the installer left the old unit on the roof.  Plaintiff contends that a

14  contractor named William C. Smith, with Golden State Heating and Air, installed the new

15  HVAC unit.  (Pl.'s Opp'n at 5; Winding Decl. ¶ 5.)  Plaintiff submitted with his declaration a

16  Contractor's Invoice—which actually appears to be a bid or work estimate—from Golden State

17  Heating and Air.  (Winding Decl., Ex. B.)  This bid is dated September 9, 2006; estimates the

18  cost of work at $3,450; and states that the installation was to commence on September 11, 2006,

19  and be completed by September 16, 2006.  (Id.)  The bid included removal of the old HVAC

20  unit.  (Id.)

21         Plaintiff also contends that Golden State Heating and Air's work was

22  subsequently tested and certified by Timothy Clay, a "Certified HERS Rater."  (Winding Decl.

23  ¶ 5 & Ex. C.)  Appended to plaintiff's declaration is a letter dated March 12, 2008, addressed "To

24

25         [22]   Indeed, at the hearing, plaintiff clarified one of his evidentiary objections to Mr.
    Satariano's declaration—plaintiff argued that Mr. Satariano's collection of pictures is misleading
26  because it does not show the entire surface of the roof.

1  Whom It May Concern."  (Id., Ex. C.)  In that letter, Mr. Clay states that he "vividly" remembers

2  testing the air ducts at the Property on behalf of Golden State Heating and Air, and that he

3  "[v]isually inspected and witnessed the AC Unit in question located on top of the [Property]."

4  (Id.)  The letter does not expressly describe whether the AC Unit was newer or older unit, but the

5  implication is that it was a newer unit.  Mr. Clay's letter does not provide a date for the testing

6  and inspection he conducted, and does not attach any paperwork because Mr. Clay no longer

7  serves as a Certified HERS Rater.  (See id.)

8         Plaintiff also attached to his declaration an appraisal report prepared by Trans

9  State Appraisal Service in connection with an appraisal conducted on October 15, 2007, which

10  states that some type of air conditioner was present at the Property.  (Winding Decl. ¶ 7 & Ex. C-

11  1–C-20.)  The appraisal report states that the Property has "FWA C/Air," which appears to be a

12  reference to central air conditioning.  (Id., Exs. C-4, C-9, C-10.)  The report does not describe the

13  nature or age of the HVAC unit at the Property and is generally unhelpful in resolving the present

14  motion.

15         Critically, however, plaintiff relies on the sworn affidavit of Okey Frank Ozoh,

16  the contractor with whom plaintiff met on May 29, 2008, to discuss remediation of the code

17  violations pertaining to the non-compliant bathrooms at the Property.  Mr. Ozoh's affidavit states

18  that during his visit to the Property on May 29, 2008, he "went into the attic of the home, the

19  crawlspace under the house and the rooftop."  (Ozoh Aff. ¶ 17.)  Mr. Ozoh's affidavit further

20  states:

21         What I did notice on the roof was an old A/C/ unit and a newer A/C unit.  I
           inquired about the old A/C/ unit, and Mr. Winding stated that his
22         contractor had not removed it yet and that he would be removing it soon.

23  (Id. ¶ 18.)  Mr. Ozoh's sworn affidavit, which is based on personal knowledge, directly

24  contradicts Allstate's contention that plaintiff never installed a newer HVAC unit prior to the

25  alleged theft and vandalism.

26         In its reply brief, Allstate makes several arguments that are essentially addressed

                                                      31

to the credibility of plaintiff's evidence and witnesses.  First, in an apparent response to Mr.

Ozoh's affidavit, Allstate argues that plaintiff has not explained why the old HVAC unit was still

on the roof in 2008 when the bid from Golden State Heating and Air stated that it would remove

the old unit.  (Allstate's Reply Br. Re Counterclaim at 2-3.)  Allstate's argument is not

responsive to, and does not negate, the sworn affidavit of Mr. Ozoh stating that Mr. Ozoh

observed an old HVAC unit and a newer unit on the roof on May 29, 2008.

Second, Allstate points to a contracting estimate prepared by AYS Consulting,

Inc. and dated August 4, 2008, which estimated the costs for demolition and repair of several

aspects of the Property.  (See Campos Suppl. Decl., Ex. F.)  Allstate offers the following

argument in regards to the estimate:

> On the first page of the contractor's invoice, there is an entry for
> "repair leaking roof due to A/C removal" listing cost of material in the
> amount of $2,550 and labor in the amount of $2,750.  It is respectfully
> submitted that it is *beyond credibility* to assume that damage from leakage
> from a removed air conditioning unit one month before during the summer
> season would result in the condition identified.

(Allstate's Reply Br. Re Counterclaim at 3 (emphasis added).)  Allstate's argument in this regard

is confusing, and the import of the argument is not entirely clear.  At bottom, however, Allstate's

reference to "beyond credibility" is telling—credibility is not at issue in the context of a summary

judgment motion.[23]

Allstate is not entitled to summary judgment on its counterclaim for two primary

reasons.  First, plaintiff has presented evidence that creates a genuine dispute of material fact

regarding whether he actually installed a newer HVAC unit and whether that unit was

subsequently stolen.  As a result, there is a genuine dispute of material fact as to whether plaintiff

concealed facts or made a misrepresentation to Allstate in connection with the insurance claim.

---

[23]  Allstate also attempts to impugn the credibility of AYS Consulting, Inc., relying on documents that are not the proper subject of judicial notice, as stated above.  Again, the credibility of witnesses is not at issue in the context of the pending motion

1    And although Allstate has made several arguments that may ultimately convince a jury that

2    plaintiff's statements, his witnesses' statements, and his evidence should be given less weight

3    than Allstate's witnesses and evidence, such arguments are not appropriate in the context of a

4    motion for summary judgment, where the court may not assess credibility and weigh evidence.

5             Second, Allstate has not proven as a matter of law that plaintiff intended to

6    conceal or misrepresent a material fact from Allstate.  Allstate does not point to an admission by

7    plaintiff, as in the Cummings case, that plaintiff admitted lying to Allstate.  Additionally, Allstate

8    has not shown intent to defraud by implication, i.e., it has not demonstrated that any

9    misrepresentation is material *and* that plaintiff willfully made it with knowledge of its falsity.  To

10   the contrary, plaintiff vehemently argues that there was no false representation at all.  Again, the

11   determination of the truth or falsity of plaintiff's statements, which will likely be assessed in light

12   of plaintiff's credibility and the weighing of evidence, is the province of the jury at trial.

13            Plaintiff has produced evidence that creates a genuine dispute of material fact

14   regarding Allstate's claim that plaintiff never installed a newer HVAC unit on the roof of the

15   house at the Property.  Accordingly, the court cannot conclude that Allstate is entitled to

16   judgment as a matter of law on its claim that plaintiff willfully concealed or misrepresented

17   material facts concerning the insurance claim.  Accordingly, the undersigned recommends that

18   the court deny Allstate's motion for summary judgment addressed to its counterclaim.

19   VII.   <u>CONCLUSION</u>

20            For the foregoing reasons, IT IS HEREBY ORDERED that:

21            1.      Plaintiff's evidentiary objections to the declaration of Fred Satariano (Dkt.

22   No. 82) are sustained in part and overruled in part.

23            2.      Defendant Allstate Insurance Company's Request for Judicial Notice (Dkt.

24   No. 92) is denied in its entirety.

25   ////

26   ////

It is FURTHER RECOMMENDED that:

1.   Defendant Allstate Insurance Company's Alternative Motion for Partial Summary Judgment/Summary Adjudication addressed to plaintiff's claims against it (Dkt. No. 60) be granted in part and denied in part.  Specifically, it is recommended that defendant Allstate Insurance Company be granted summary judgment as to plaintiff's claim for insurance bad faith and the corresponding request for punitive damages, but that the motion for summary judgment be denied in all other respects.

2.   Defendant Allstate Insurance Company's Motion for Summary Judgment addressed to its counterclaim (Dkt. No. 59) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

DATED:  October 31, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

34