1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JACOB WINDING,                                No. 2:09-cv-3526-KJM-KJN PS

12                    Plaintiff,

13            v.                                     FINDINGS AND RECOMMENDATIONS

14    ALLSTATE,

15                    Defendant.

16

17    INTRODUCTION

18            In an order filed December 17, 2014, the district judge dismissed all of plaintiff and

19    counter-defendant Jacob Winding's ("Winding") claims, and instructed the Clerk of Court to

20    enter default against Winding on defendant and counterclaimant Allstate Insurance Company's

21    ("Allstate") counterclaim.  (ECF No. 192.)  Presently pending before the court is Allstate's

22    motion for entry of default judgment against Winding on Allstate's counterclaim.  (ECF No. 194.)

23    After Winding failed to file an opposition to the motion in accordance with Local Rule 230(c), the

24    motion was submitted on the record and written briefing pursuant to Local Rule 230(g).  (ECF

25    No. 202.)

26            Upon careful review of the written briefing, the court's record, and the applicable law, and

27    for the reasons discussed below, the court recommends that Allstate's motion for default

28    judgment be GRANTED.

                                                    1

1     BACKGROUND

2        This action, initially removed to this court from the San Joaquin County Superior Court

3 on December 21, 2009, has a lengthy procedural history, which need not be repeated here. (ECF

4 No. 1.) In short, Winding alleged that Allstate had provided Winding with homeowner's

5 insurance coverage for Winding's real property located at 1127 West Harding Way, Stockton,

6 California 95203 (the "Property") under Policy number 00924347169 (the "Policy"). (See First

7 Amended Complaint, ECF No. 1 at 4-13 ["FAC"] ¶ 6.) After the Property was allegedly

8 subjected to theft and vandalism around July 12, 2008, Winding submitted a claim under the

9 Policy for loss of, and/or damage to, *inter alia*, cabinets, fixtures, floor coverings, plumbing, an

10 HVAC system, sinks, refrigerator, stove, appliances, sprinkler system, and paint associated with

11 the Property. (Id. ¶¶ 10-12.) According to Winding, although Allstate sent him a check in the

12 amount of $15,704.85, Allstate failed to fairly investigate, adjust, and settle Winding's claim, and

13 ultimately refused to communicate with Winding and pay for Winding's full damages and costs

14 of repair, which purportedly amounted to $114,816.44. (Id. ¶¶ 11, 14-21.) Winding asserted

15 causes of action for declaratory relief, breach of contract, fraud, and insurer bad faith. (Id. ¶¶ 22-

16 42.)

17        Allstate filed a counterclaim against Winding in this action. (See Amended Answer and

18 Counterclaim to First Amended Complaint, ECF No. 42 ["Countercl."].) In its counterclaim, and

19 as discussed further below, Allstate essentially claimed that Winding had willfully concealed

20 and/or misrepresented material facts and circumstances pertaining to his claim under the Policy,

21 thereby voiding coverage for the losses or damages involved in that claim pursuant to the terms of

22 the Policy. As such, Allstate sought reimbursement of the $15,704.85 it had already paid out to

23 Winding. (Id. ¶¶ 1-5.)

24        Ultimately, on December 17, 2014, in light of Winding's several failures to comply with

25 the Local Rules and the court's orders, the district judge dismissed all of Winding's claims, and

26 instructed the Clerk of Court to enter default against Winding on Allstate's counterclaim. (ECF

27 ////

28 ////

No. 192.)[1]  That same day, pursuant to the court's order, the Clerk of Court entered Winding's

default on Allstate's counterclaim.  (ECF No. 193.)  The instant motion for default judgment

followed.  (ECF No. 194.)  In its motion for default judgment, Allstate seeks recovery of the

$15,704.85 it had previously paid to Winding pursuant to the Policy.  As noted above, that relief

was also requested in Allstate's counterclaim.

LEGAL STANDARDS

        Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend

against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

(9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies

within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

1980).  In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action[,] (5) the possibility of a
> dispute concerning material facts[,] (6) whether the default was due
> to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

disfavored.  Id. at 1472.

        As a general rule, once default is entered, well-pleaded factual allegations in the operative

complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc.

v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs,

285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the

---

[1] The detailed reasoning of the district judge is outlined in her order filed December 17, 2014, and is incorporated here by reference.  (See ECF No. 192.)  Additionally, the court notes that plaintiff's motion for reconsideration of that order (ECF No. 197) was subsequently denied.  (See ECF No. 203.)

1  complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the

2  pleadings, and claims which are legally insufficient, are not established by default." Cripps v.

3  Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d

4  1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir.

5  2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law);

6  Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not

7  be entered on a legally insufficient claim").  A party's default does not establish the amount of

8  damages.  Geddes, 559 F.2d at 560.

9  DISCUSSION

10      The court evaluates each of the Eitel factors separately to determine whether a particular

11  factor militates in favor of or against the entry of default judgment.

12          1.    *Factor One: Possibility of Prejudice to the Plaintiff*

13      The first Eitel factor considers whether the plaintiff would suffer prejudice if default

14  judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting

15  a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, Allstate, which is

16  essentially the plaintiff for purposes of the counterclaim, would face prejudice if the court did not

17  enter a default judgment, because Allstate would be without another recourse against Winding.

18  Accordingly, the first Eitel factor favors the entry of a default judgment.

19          2.    *Factors Two and Three: The Merits of the Plaintiff's Substantive Claims*

20  *and the Sufficiency of the Complaint*

21      The court considers the merits of Allstate's substantive claim and the sufficiency of the

22  counterclaim together below because of the relatedness of the two inquiries.

23      Allstate has shown that the Policy at issue here contained a provision stating "We do not

24  cover any loss or occurrence in which any insured person has concealed or misrepresented any

25  material fact or circumstance."  (See Countercl. ¶ 1; Affidavit of Glen Davis, ECF No. 62 ["Davis

26  Aff."] Ex. A at 5.)  "A fraud and concealment provision in an insurance contract will generally

27  void the policy where an insured attempts to defraud the insurer."  Ram v. Infinity Select Ins., 807

28  F. Supp. 2d 843, 853 (N.D. Cal. 2011).  "California law provides that an insurer may deny a claim

4

1    or void a policy if an insured knowingly, intentionally, and with the intent to defraud

2    misrepresents or conceals a material fact during the presentation of the insurance claim." <u>Morris</u>

3    <u>v. Allstate Ins. Co.</u>, 16 F. Supp. 3d 1095, 1100 (C.D. Cal. 2014) (citing <u>Cummings v. Fire Ins.</u>

4    <u>Exch.</u>, 202 Cal. App. 3d 1407, 1417 (1988)).  "Materiality is determined by its prospective

5    reasonable relevance to the insurer's inquiry…Thus, a misrepresentation is material if it concerns

6    a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would

7    attach importance to the fact misrepresented." <u>Id.</u>  "Furthermore, intent to defraud the insurer is

8    necessarily implied when the misrepresentation is material and the insured willfully makes it with

9    knowledge of its falsity." <u>Id.</u>

10          In this case, the factual allegations in Allstate's counterclaim, taken as true after the entry

11   of default, and supplemented by additional evidence submitted along with Allstate's motion,

12   demonstrate that Winding misrepresented and/or concealed material facts during the presentation

13   of his claim under the Policy with the intent to defraud.  <u>Shanghai Automation Instr. Co. v. Kuei</u>,

14   194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001) ("Where, as here, a default has been entered, the

15   factual allegations of the Complaint together with other competent evidence submitted must be

16   taken as true.").

17          For example, Winding represented to Allstate that the Property had been under

18   construction, and indeed was extensively remodeled with upgraded items such as granite

19   countertops and custom cabinets, prior to the alleged July 12, 2008 theft and vandalism.

20   (Countercl. ¶ 2; Deposition of Jess Molina, ECF No. 61, Ex. B ["Molina Dep."] 47:23-48:19;

21   Declaration of Frank Iaccino, ECF No. 194-8 ["Iaccino Decl."] ¶¶ 8-9.)  However, Allstate's

22   inspection of the premises only revealed evidence of remnants of standard tile and cabinets, and

23   Winding never provided Allstate with receipts or other evidence for purchase of the alleged

24   upgraded materials.  (Countercl. ¶ 2; Molina Dep. 47:23-48:19, 55:16-56:5, 61:5-22; Iaccino

25   Decl. ¶ 6.)  Moreover, according to the City of Stockton's Code Enforcement Division, the

26   Property had actually been designated as unsafe to occupy as early as October of 2007, along with

27   an order that a building permit be obtained to proceed with work that had initially been started on

28   the Property.  (Countercl. ¶ 3; Affidavit of Fred Satariano, ECF No. 73 ["Satariano Aff."] ¶ 3.)

During subsequent inspections by the City of Stockton in 2007-2008, the Property remained vacant with no evidence of further work done to the Property until a City of Stockton-ordered abatement of excessive amounts of garbage, debris, junk, and appliances was performed on July 11, 2008, the day before the alleged theft and vandalism of the Property.  (Countercl. ¶ 3; Satariano Aff. ¶¶ 4-12.)  On July 14, 2008, the City of Stockton again inspected the Property and confirmed that the ordered abatement had been completed.  (Satariano Aff. ¶¶ 11-12.)

Winding's misrepresentations concerning the condition, contents of, and status of construction on the Property were material, not only because a reasonable insurer would want to ascertain the true value of the Property and its contents, but because the Policy generally excluded coverage for loss caused by "Vandalism or Malicious Mischief if your dwelling is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief."  (Davis Aff. Ex. A at 7.)  However, "[a] dwelling under construction is not considered vacant or unoccupied."  (Id.)  Thus, whether or not the Property was truly under construction was important with respect to making a coverage determination under the Policy.  Furthermore, the Policy specifically excluded loss caused by "[e]nforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any building structure, other structure or land at the residence premises."  (Id. at 6.)  Allstate asserts that, had it known that the Property was not actually damaged through theft and vandalism, but had been the subject of an abatement action by the City of Stockton, Allstate would not have paid for any damage to the Property, because abatement of a nuisance by a government agency is not a covered loss.  (Iaccino Decl. ¶ 11.)

Additionally, as part of the claim process, Winding asserted that a new HVAC unit had been stolen from the Property as part of the alleged July 12, 2008 theft and vandalism, and the value of that unit was included in the check paid out to Winding.  (Molina Dep. 57:17-58:16.)  However, Allstate later obtained evidence that a new HVAC unit had been delivered to the Property, but was subsequently recovered by the contractor, because Winding had failed to pay the contractor.  (Satariano Aff. ¶ 3.)  Allstate contends that, if it had known that the new HVAC unit was retrieved by the seller, and not stolen, it would not have paid for the alleged theft of that

1    item.  (Iaccino Decl. ¶ 11.)

2            Therefore, Winding's misrepresentations and concealments were material, because, as

3    outlined above, they concerned subjects reasonably relevant to the investigation of Winding's

4    claim under the Policy, and a reasonable insurer would have attached importance to the facts

5    misrepresented or concealed.  Also, Allstate's counterclaim alleged that Winding's

6    misrepresentations and concealments were willful and fraudulent, and that allegation is supported

7    by the counterclaim's other factual allegations and the supplemental evidence submitted along

8    with Allstate's motion.  As such, it is implicit that Winding intended to defraud Allstate.  In light

9    of Winding's conduct, Allstate is entitled to void the Policy and recover the $15,704.85 it

10   previously paid to Winding pursuant to the Policy.  (FAC ¶ 14; Iaccino Decl. ¶ 7.)

11           Accordingly, the second and third Eitel factors favor the entry of a default judgment.

12                  3.      *Factor Four: The Sum of Money at Stake in the Action*

13           Under the fourth factor cited in Eitel, "the court must consider the amount of money at

14   stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at

15   1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D.

16   Cal. 2003).  In this case, Allstate only seeks reimbursement of $15,704.85, the amount that it had

17   previously paid to Winding pursuant to the Policy.  Thus, the recovery that Allstate seeks is

18   directly proportional to the harm that Allstate suffered in paying out insurance policy benefits that

19   it did not actually owe under the terms of the Policy.  Therefore, the fourth Eitel factor weighs in

20   favor of a default judgment.

21                  4.      *Factor Five: The Possibility of a Dispute Concerning Material Facts*

22           In this case, following the clerk's entry of default, there is no likelihood that any genuine

23   issue of material fact exists.  See,e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388,

24   393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after

25   the court clerk enters default judgment, there is no likelihood that any genuine issue of material

26   fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at

27   1177.  As such, the court concludes that the fifth Eitel factor favors a default judgment.

28   ////

7

5.      *Factor Six: Whether the Default Was Due to Excusable Neglect*

In this case, the district judge specifically directed the entry of default against Winding on Allstate's counterclaim based on Winding's several failures to comply with the Local Rules and the court's orders, despite numerous continuances and accommodations.  (See ECF No. 192.) Therefore, the default here was not due to excusable neglect, and this Eitel factor favors the entry of a default judgment.

6.      *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, Winding's conduct in this litigation has made a decision on the merits impracticable, if not impossible.  In any event, to the extent that the seventh Eitel factor militates against a default judgment, it is strongly outweighed by the other Eitel factors.

In sum, upon consideration and balancing of all the Eitel factors, the court concludes that Allstate is entitled to a default judgment against Winding on Allstate's counterclaim.  Also, the relief sought by virtue of the motion for default judgment – reimbursement of $15,704.85 that Allstate previously paid to Winding pursuant to the Policy – is supported by the record and the applicable law.

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY RECOMMENDED that:

1.      Allstate's motion for default judgment (ECF No. 194) be GRANTED.

2.      Judgment be entered in Allstate's favor and against Winding on Allstate's counterclaim.

3.      Allstate be awarded $15,704.85 as reimbursement of the funds previously paid to Winding pursuant to the Policy.

4.      The Clerk of Court be directed to vacate all dates and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written

8

1    objections with the court and serve a copy on all parties.  Such a document should be captioned

2    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3    shall be served on all parties and filed with the court within fourteen (14) days after service of the

4    objections.  The parties are advised that failure to file objections within the specified time may

5    waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

6    Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

7        IT IS SO RECOMMENDED.

8    Dated:  February 27, 2015

9

10                                         KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28